UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

TIMOTHY J. DULLEN,

                                        Plaintiff,

              v.                                        6:05-CV-0558
                                                       (GLS/GJD)
COMMISSIONER OF SOCIAL SECURITY,
                                        Defendant.

_____

JENNIFER GALE SMITH, ESQ., Attorney for Plaintiff
WILLIAM H. PEASE, Assistant U.S. Attorney, Attorney for Defendant

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g) to review the

final decision of the Commissioner of Social Security, denying his application for

disability insurance benefits.

## PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits on February 28, 2003

(protective filing date), alleging disability since January 7, 2002.  (Administrative

Transcript ("Tr") at 39-41, 46).  The application was initially denied on October 2,

2003.  (Tr. 21-25).  Plaintiff requested a hearing before an Administrative Law Judge

("ALJ") which was held on October 8, 2004.  (Tr. 266-87).  On January 21, 2005, the

ALJ issued a decision denying benefits.  (Tr. 9-20).  The ALJ's decision became the

final decision of the Commissioner when the Appeals Council denied plaintiff's

request for review on April 5, 2005.  (Tr. 4-6).

**CONTENTIONS**

Plaintiff raises the following claims for this court's review:

1.    The ALJ failed to follow the treating physician rule. Brief at 6-10.

2.    The ALJ's decision is not supported by substantial evidence. Brief at 11-13.

3.    The ALJ failed to properly assess plaintiff's credibility. Brief at 14.

Plaintiff argues for reversal of the administrative decision and remand for calculation of benefits. Brief at 15.  Defendant argues that the Commissioner's decision is supported by substantial evidence and the complaint should be dismissed.

**FACTS**

**1.    Non-Medical Facts**

At the October 2004 hearing, plaintiff testified that he was born on February 8, 1960, had a General Education Diploma (GED), and lived with his girlfriend. (Tr. 271, 275).  Plaintiff worked as a truck driver between 1987 and 2002. (Tr. 271).  He has also worked in a warehouse, and as a roofer. (Tr. 70, 271).  Plaintiff was injured at work when he fell off a tractor trailer and landed on his back on November 13, 2001. (Tr. 82).  Plaintiff continued doing light duty work until January 18, 2002.  (Tr. 82).

On September 7, 2003, plaintiff completed a "Function Report" (Tr. 74-84), in which he stated that his daily activities are "quite limited." (Tr. 74).  Plaintiff stated that he shopped for groceries once a week, read, watched television, and attended Marine Corps meetings. (Tr. 78).  Plaintiff also indicated that he could use his riding

lawnmower for short periods of time before the pain became unbearable, but could not use a weed trimmer. (Tr. 77). At the hearing, plaintiff testified that he has "extreme" lower back pain that radiates down his right leg. (Tr. 272-73).

**2.    Medical Facts**

### A.    Treating Physicians and MRI Results

Plaintiff has been treated by numerous physicians; including, Dr. Robinson, an orthopedic surgeon, Dr. Tiso and Dr. Catania, specializing in pain management, and Dr. Satterly, plaintiff's primary care physician. Additionally, plaintiff has had five MRI's of his lumbar spine.

### 1. MRI Results

Plaintiff has had five magnetic resonance imaging tests (MRIs) on his lumbar spine. The first MRI was performed in October 1999 and revealed a sacral segment that was lumbarized, degenerative disc disease at L3-4 and L5-S1, no significant disc bulges or disc herniation, and mild disc bulges at L3-4 and L5-S1. (Tr. 98-99). The second MRI was performed in January 2002 and revealed small protruding disc herniation on the left paracentral at L4-5 causing a slight mass effect on the thecal sac and probably left L4 nerve root, and mild disc bulging at L2-3 that would not significantly effect neural structures. (Tr. 97).

The third MRI was performed in July 2002 and revealed an "unchanged MRI" with bulges at L3-4 and L5-S1 that were only slightly flattening the thecal sac, and were flattening and narrowing each foramina at both levels. (Tr. 96). The fourth

MRI was performed in June 2003 and revealed diffuse annular disc bulges at the L3-4, L4-5 and L5-S1 level, and there were post-operative changes at the L5-S1 level. (Tr. 94-95). The left S1 nerve root sheath was asymmetrically larger than the right S1 nerve root sheath. (Tr. 94-95). There was no focal herniated nucleus pulposus or nerve root impingement. (Tr. 95). The fifth MRI was performed in July 2004 and revealed post-operative changes as well as scar tissue in various areas of the site. (Tr. 264-65). However, there was no evidence of a focal herniated nucleus pulposus. (Tr. 265).

### 2. Clyde Satterly, M.D.

The record indicates that Clyde Satterly, M.D., from St. Joseph's Family Medicine, treated plaintiff between August 1999 and March 2000. (Tr. 124-27, 131-33). In an August 1999 report, Dr. Satterly stated that plaintiff appeared uncomfortable and moved very slowly, had tenderness in the paraspinous muscles, had tenderness in the lumbar region, but had full range of motion. (Tr. 133). Dr. Satterly questioned whether plaintiff's low back pain involved a slipped disc or was simply muscle strain because there were no neurological symptoms. (Tr. 133).

Later in August 1999, Dr. Satterly recommended plaintiff not lift anything greater than ten pounds, avoid excessive bending, and begin physical therapy. Dr. Satterly also prescribed the pain medication, Vicodin. (Tr. 132). At the end of August 1999, Dr. Satterly noted that plaintiff did not want to comply with a normal physical therapy regimen and sometimes "double[d] up" on Vicodin. (Tr. 130). Dr.

Satterly strongly urged plaintiff to not continue taking excess Vicodin. (Tr. 130).  In October 1999, Dr. Satterly stated that plaintiff's condition was "essentially unchanged" and noted that an orthopedic surgeon had suggested plaintiff choose between surgery and a pain clinic. (Tr. 127-28).  In January 2000, plaintiff stated that there was no difference in his back pain compared to the previous visit, and Dr. Satterly suggested plaintiff not lift anything over ten pounds. (Tr. 126).  In March 2000, Dr. Satterly learned that plaintiff had admitted himself into Tully Hill for abuse of pain medication.  Dr. Satterly noted plaintiff was having panic attacks, prescribed Paxil, and suggested plaintiff wean himself off Vicodin. (Tr. 125).

On October 1, 2004, Dr. Satterly completed a "Medical Source Statement of Ability to Do Work-Related Activities,"[1] indicating that plaintiff was limited to occasionally lifting ten pounds, frequently lifting less than ten pounds, standing and/or walking for less than 2 hours during an eight hour day, sitting for less than six hours during an eight hour workday, and had limited pushing and pulling abilities in the upper and lower extremities. (Tr. 260-61).  In this form, Dr. Satterly also indicated plaintiff had postural limitations; including, being able to balance occasionally, but never being able to climb, kneel, crouch, crawl, or stoop.  (Tr. 261).

### 3.  Dr. Stephen Robinson, M.D.

Stephen Robinson, M.D., an orthopedic surgeon, began treating plaintiff in

---

[1] This form appears to be what is also referred to as a "residual functional capacity" (RFC) evaluation since it states the physical functions that the plaintiff is able to perform despite his or her impairments.

March 2002 and performed a discectomy on plaintiff on October 23, 2002. (Tr. 92-93, 167).  During Dr. Robinson's first examination in March 2002, plaintiff was in obvious discomfort, was tender in the lumbar spine, but ambulated well. (Tr. 167). Plaintiff was able to flex forward far enough to touch his fingertips to his knees and could perform side bends to twenty degrees with moderate low back pain.  Plaintiff could raise both legs to ninety degrees. (Tr. 167).  Plaintiff stated that he desired to proceed with the discectomy. (Tr. 166).  In April 2002, Dr. Robinson diagnosed plaintiff with chronic lumbar radicular syndrome, secondary to L4-5 herniated disc on the left. (Tr. 166).

The surgery was performed in October of 2002, and three weeks later, in November 2002, plaintiff was recovering and had some "definite improvement over the pre-operative status." (Tr. 157).  In December 2002, plaintiff was able to straight leg raise to ninety degrees with some low back pain, and Dr. Robinson decided to start plaintiff on physical therapy. (Tr. 156).  In January 2003, Dr. Robinson referred plaintiff to physicians specializing in pain management. (Tr. 156).

In both May and June 2003, plaintiff complained to Dr. Robinson of pain in his lumbar spine. (Tr. 146, 148).  Dr. Robinson found that plaintiff ambulated well and without a limp, and had a normal station and stance. (Tr. 146).  Dr. Robinson found plaintiff could not go back to his previous job, and could not do any desk job because plaintiff could not sit for any period of time. (Tr. 146).

The record contains a medical source statement of plaintiff's ability to perform

"work-related activities." (Tr. 256-59).  The form is dated September 29, 2004, and contains two signatures, one is Amy Gemelli, RNPC,[2] and the other signature belongs to Carrie Jones, M.D. (Tr. 259).  It is clear from the medical records that Amy Gemelli works with the physicians at Syracuse Orthopedic Specialists (SOS), thus, this court assumes that Dr. Jones is also a physician, working with the SOS group.

This RFC form indicates that plaintiff is limited to occasionally lifting ten pounds, frequently lifting less than ten pounds, standing and/or walking for less than two hours during an eight hour workday, sitting for less than six hours in an eight hour workday, and has pushing and pulling limitations in the upper and lower extremities. (Tr. 257).   The form also states that plaintiff has postural limitations; including, only being able to balance occasionally, and never being able to climb, kneel, crouch, crawl, or stoop. (Tr. 257).  Plaintiff is also limited from working with hazardous machinery, and from working at jobs with extreme temperature changes or with vibrations. (Tr. 259).

### 4.    Joseph Catania, M.D. and Robert Tiso, M.D.

Joseph Catania, M.D. and Robert Tiso, M.D. from the New York Pain Center treated plaintiff for pain.  The record indicates that Dr. Tiso performed three caudal epidural corticosteroid injection with fluoroscopic guidance (Tr. 243 (July 7, 2004),

---

[2] It appears from her signature that the letters following Amy Gemelli's name in the September 2004 RFC evaluation are RNPC, indicating that Amy Gemelli is a Nurse Practitioner, however, in the actual medical reports from Syracuse Orthopedic Surgeons, Amy Gemelli's name is followed by the initials RPAC, which would indicate that Amy Gemelli is a physician's assistant. Her title does not affect this court's opinion.

7

244 (June 9, 2004), and 245 (May 13, 2004).  Additionally, Dr. Tiso performed three right lumbar selective transforaminal blocks.  (Tr. 246 (January 7, 2004), 247 (December 8, 2003), 248 (November 20, 2003)).

The treatment plan for plaintiff included right lumbar transforaminal blocks, aqua-therapy, acupuncture, and prescription drugs including OxyContin and Roxicodone. (Tr. 135-39, 251-54).  Between May 2003 and January 2004, plaintiff attended forty-four sessions of aquatherapy physical therapy.  (Tr. 190-242).

### B.    Non-Examining Physician

Dr. N. Siddiqi[3] completed a physical residual functional capacity (RFC) assessment on September 23, 2003. (Tr. 168-73).  The RFC indicated that plaintiff was limited to lifting ten pounds occasionally, ten pounds frequently, standing and walking for two hours in an eight hour day, sitting for six hours in an eight hour workday, and unlimited pushing and pulling.  (Tr. 169).  The RFC further indicated plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl.  (Tr. 170).

### DISCUSSION

## 1.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental

---

[3] There is no indication of this doctor's full name or his specialty in the record.

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; ... .  Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir. 1984).

## 2.   <u>Scope of Review</u>

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)(citations omitted).  It must be

10

"more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

**3.    Treating Physician and Residual Functional Capacity**

While a treating physician's opinion is not binding on the Commissioner, the opinion must be given controlling weight when it is well supported by medical findings and ***not inconsistent with other substantial evidence***. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d).  If the treating physician's opinion is contradicted by other substantial evidence, the ALJ is not required to give the opinion controlling weight. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must, however, properly analyze the reasons that the report is rejected. *Id.* An ALJ may not arbitrarily substitute his own judgment for competent medical

opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

If the treating physician's opinion is not given controlling weight, the ALJ must assess the following factors: the length of the treatment relationship; the frequency of examination for the condition in question; the medical evidence supporting the opinion; the consistency of the opinion with the record as a whole; the qualifications of the treating physician; and other factors tending to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(d)(6); 416.927(d)(2)-(d)(6). Failure to follow the proper standard is a ground for reversal. *Barnett v. Apfel*, 13 F. Supp. 2d 312, 316 (N.D.N.Y. 1998)(citation omitted).

In rendering a residual functional capacity (RFC) determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545; 416.945. *See Martona v. Apfel*, 70 F. Supp. 2d 145 (N.D.N.Y. 1999)(citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Verginio v. Apfel*, 1998 WL 743706 (N.D.N.Y. Oct. 23, 1998); *LaPorta v. Bowen*, 737 F. Supp. at 183.

In this case, the ALJ found that plaintiff had the RFC to perform less than a full range of light and sedentary work, but after soliciting the testimony of a vocational expert, the ALJ found that plaintiff could still perform a significant number of jobs in

the national economy. (Tr. 20). Plaintiff argues that the ALJ failed to follow the treating physician rule in rejecting the RFC evaluations submitted by Dr. Satterly and Dr. Carrie Jones. (Tr. 260-63, 256-59). Plaintiff argues that when the vocational expert reviewed these two RFCs, her opinion was that plaintiff could perform no work in the national economy. *See* (Tr. 285). Plaintiff is partially correct in this assertion.

The ALJ rejected two assessments of plaintiff's ability to perform work, one signed by Amy Gemelli, RNPC and by Dr. Carrie Jones, (T. 256 – 59), and the other prepared by Dr. Satterly. (T. 260-63). Plaintiff argues that these assessments of plaintiff's residual functional capacity show that plaintiff is unable to perform light work which the ALJ found that plaintiff could perform.

There are some problems with the two RFC statements prepared by Dr. Satterly and Dr. Carrie Jones, however, there are also problems with the rejection of one of those reports by the ALJ. With respect to Dr. Satterly's assessment, (T. 260-63), the record shows that Dr. Satterly was plaintiff's treating physician during 1999. (T. 127, 130 -37). Dr. Satterly is a specialist in family medicine and referred plaintiff to an orthopedic physician. (T. 131). Dr. Stephen Robinson was the orthopedic surgeon that plaintiff began treatment with during March of 2002 and for the next year and half into September of 2003. (T. 141-67). At the hearing, plaintiff supplied additional records from Dr. Robinson which covered the period May through July 2004. (T. 176).

13

It does *not* appear that Dr. Satterly was actively treating plaintiff while Dr. Robinson, the orthopedic specialist, was treating plaintiff for his serious back problems.  As a specialist in family medicine, Dr. Satterly would have less expertise in orthopedic impairments than Dr. Robinson.  Because Dr. Robinson performed surgery on plaintiff and treated plaintiff post-operatively, he would be in a better position to evaluate plaintiff's RFC.  The ALJ would be correct in rejecting an assessment by Dr. Satterly in favor of the opinion of a specialist.

With respect to Dr. Jones's RFC, it is unclear whether Dr. Jones completed the assessment herself since the assessment contains two signatures. (Tr.  259).  It is also unclear how long Dr. Jones has been treating the plaintiff.  The RFC appears to actually have been completed by Amy Gemelli, a physician's assistant (or nurse practitioner) in Dr. Robinson's office.   Dr. Jones may be an associate in Dr. Robinson's office, however, none of that is clear from the record.

The ALJ found the RFCs suspect because they were completed shortly before the hearing in October of 2000 at the request of plaintiff's counsel. (Tr. 17).  The ALJ also rejected the two RFC evaluations because they were not accompanied by "supporting clinical data."  The Social Security regulations *specifically* provide that the agency will seek additional evidence or clarification from the treating source if the report contains a conflict or ambiguity that must be resolved. 20 C.F.R. §§ 404.1512 (e)(1), 416.912(e)(1).  Even if correct evaluation of the medical records revealed inadequate support for the treating physician's opinion, the ALJ's duty is to

re-contact the treating physician to fully develop the record. *Ewald v. Comm'r of Social Security*, CV-05-4583, 2006 U.S. Dist. LEXIS 83145, *6 (E.D.N.Y. Nov. 9, 2006)(citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)).

The main treating physician in this case has been orthopedic surgeon Dr. Stephen Robinson, who performed the surgery on plaintiff and treated plaintiff extensively after the surgery for almost 1 year, (Tr. 141-47), and apparently during May 9, 2004. (Tr. 176-83).  Since an assessment of plaintiff's residual functional capacity is ***critical***, then Dr. Robinson is the doctor who should have performed that assessment.  Because it appears that Dr. Jones's RFC originated from the same office in which Dr. Robinson practices, the ALJ should have attempted to clarify this RFC before rejecting it.

This is particularly true because Dr. Robinson's certainly has a great deal of "supporting clinical data" regarding plaintiff.  Thus, to reject an RFC evaluation from a treating physician who is affiliated with Dr. Robinson based on a lack of clinical data, when it may be that the clinical data upon which that opinion is based is already in the record, is clear error by the ALJ.  The court also notes that the RFC reports both refer to clinical data. (Tr. 261, 262, 257, 258, 259).  Additionally, on June 20, 2003, Dr. Robinson has stated in his narrative report that plaintiff could not return to his previous work, and did not think that he could "do any kind of a desk job as well", because he could not "sit for any period of time ... ." (Tr. 146).  The VE testified that if Dr. Satterly's and Dr. Jones's RFCs were correct, plaintiff could not perform any

other work.[4] (Tr. 285).

The ALJ erred in accepting the RFC assessment written by Dr. Siddiqi.  Dr. Siddiqi was a non-examining physician and questioned Dr. Robinson's opinion about plaintiff's ability to sit. (Tr. 172).  He questions this opinion because Dr. Siddiqi states that plaintiff had been examined on "multiple occasions" but that none of the examining physicians noted that plaintiff could not "sit comfortably." (Tr. 172).  Dr. Siddiqi appears to neglect the fact that Dr. Robinson performed plaintiff's surgery and followed him post-operatively.

Clearly, Dr. Siddiqi's opinion as a non-examining physician is entitled to less weight than a treating orthopedic specialist who performed surgery on plaintiff and treated plaintiff for more than two years.  Even the regulations state that even though the opinion of a non-examining physician constitutes "evidence," the Agency will generally give more weight to the opinion of a source who has examined plaintiff than to the opinion of a source who has not examined the plaintiff. 20 C.F.R. § 404.1527(d).

Tthe ALJ in this case improperly rejected the RFC submitted by Dr. Jones, and thereby perhaps improperly rejected an opinion based on reports from Dr. Robinson's office.  The ALJ also improperly accepted the RFC submitted by Dr. Siddiqi. Because the VE testified that Dr. Jones's RFC would render plaintiff disabled, this

---

[4] The court also notes that plaintiff received extensive treatment from doctors Catania and Tiso, (Tr. 135-38, 249-54), but there is no functional capacity assessment from either of those physicians.  The ALJ could have asked for additional information from these physicians, who specialize in pain management.

court recommends remand for clarification of plaintiff's RFC.

## 4.   <u>**Pain and Credibility**</u>

As the fact-finder, the ALJ's function includes evaluating the credibility of all witnesses, including the plaintiff. *See Carroll v. Secretary of HHS*, 705 F.2d 638, 642 (2d Cir. 1983).  The ALJ is free to accept or reject a witness's testimony, however, a finding that the witness is not credible must be set forth with sufficient specificity to permit "an intelligible plenary review of the record." *Williams o/b/o Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988)(citing *Carroll*, 705 F.2d at 643).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record.  *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged...."  20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. *Id.* §§ 404.1529(c), 416.929(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the

credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  *Id.* §§ 404.1529(c)(3), 416.929(c)(3).

In this case, the ALJ finds that plaintiff's testimony is less than credible, and there is support for that opinion.  The plaintiff testified that he is unable to perform many functions without hurting himself, (Tr.  274 ), and that he spends approximately 6 hours each day on a couch or a bed. (T. 278).  The record contains evidence that is inconsistent with that testimony and casts some doubt on that testimony.  Plaintiff has completed forms for the Social Security administration in which he states that his activities are limited, and he lays down, but does *not* specifically state that he spends six hours laying down in a bed or on a couch. (T. 75 -79).

In addition, the record does not show that plaintiff has voiced this type of severe inability to function to any of his treating physicians.  Plaintiff told Dr. Satterly in 1999 that he did not want to continue physical therapy because of the "$ 15.00 co-payment."  (Tr. 131). The physicians at the New York Pain Center stated that plaintiff did obtain some relief from nerve blocks given during late 2003 and early 2004. (T.

273).  The extensive notes of Dr. Stephen Robinson did not contain any reference to plaintiff spending six hours in a reclining position on a bed or a couch.

The court must note, however, that the ALJ comments in his rejection of plaintiff's credibility, that although plaintiff claims to be "totally disabled," "none of [plaintiff's] physicians find him totally disabled." (Tr. 16).  That is not an accurate statement of the record, since Dr. Robinson has stated various times that plaintiff was totally disabled. (Tr. 146-76).  The court understands that the mere statement that an individual is "totally disabled" does not necessarily coincide with the Social Security definition of "total" disability and the determination of "disability" is for the Commissioner, however, the court simply notes that the ALJ's bare statement is incorrect.

**5.**     **Remand or Reversal**

This court has found that the ALJ's decision is not supported by substantial evidence.  The court must now determine whether remand for additional proceedings or reversal with a remand for calculation of benefits is appropriate.  Remand to the Commissioner for further development of the evidence is appropriate when there are gaps in the administrative record or where the ALJ has applied an improper legal standard. *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999).  Reversal for calculation of benefits is appropriate only if the record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no useful purpose. *Id.*

19

Thus, this court finds that the ALJ's decision contains error and is not supported by substantial evidence.  However, I cannot find "persuasive proof of disability" such that a remand for further proceedings would serve no useful purpose. The VE did testify that there were many jobs that plaintiff could perform, albeit not if Dr. Jones's or Dr. Satterly's RFC's were used.  However, I have also found that the rejection of Dr. Satterly's RFC may be supported by substantial evidence, and although the rejection of Dr. Jones's report was improper, further clarification is necessary.

I will thus, recommend remanding this action for additional information from plaintiff's treating physician, Dr. Robinson so that a  proper analysis of plaintiff's RFC may be made.  If Dr. Robinson is not available, the ALJ may obtain a more complete report and all treatment records from Dr. Jones to determine the basis for this report.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **REVERSED and REMANDED** pursuant to **SENTENCE FOUR** of 42 U.S.C. § 405(g) for further proceedings consistent with this Report.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN**

**DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d

85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d

15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: January 9, 2007

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge